IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| TEDRICK DIRELL WHITERS, | :: | MOTION TO VACATE |
| Movant pro se, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 4:12-CR-0009-RLV-WEJ-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 4:14-CV-0042-RLV-WEJ |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant pro se Tedrick Direll Whiters's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [220] ("Motion to Vacate"), and the government's Response [223]. For the reasons stated below, the undersigned **RECOMMENDS** that the Motion to Vacate be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

**I.   PROCEDURAL HISTORY**

A federal grand jury returned an indictment against Mr. Whiters and six other co-defendants, charging Mr. Whiters in Count One with conspiracy to commit armed robbery, in violation of 18 U.S.C. § 1951(a); in Count Two with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii); in Count Three with conspiracy to possess with the intent to distribute at least five kilograms of cocaine and at least fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846; and in Count Four with possession of a firearm in furtherance of a drug trafficking offense, in violation of § 924(c)(1)(A)(ii). (Indict. [1].) Mr. Whiters entered a binding guilty plea to Counts One and Three, pursuant to a negotiated plea agreement in which the government agreed to dismiss any and all remaining counts. (Guilty Plea and Plea Agreement [193]; Plea Tr. [238].)

At the plea hearing, the prosecutor summarized the evidence it would present if the case went to trial as follows:

> . . . [O]n October 10, 2011, there were three men who approached a man who was in Marietta . . . to see if that person could provide them kilogram quantities of cocaine.
>
> The three persons that approached were Mr. Whiters, co-defendants Sergio Vasquez, and Ospicio Aguillar. This man agreed to do it but he was actually a confidential informant, who . . . then informed the . . . Cartersville Drug Task Force about what happened. And from there the informant acted at the sole discretion of law enforcement.
>
> Mr. Whiters said he wanted [to] do the deal at his home in Atlanta, but the informant -- the story he came up with at the direction of law enforcement was that the supplier was in Dalton and would only agree to come as far south as Cartersville and refused to go to Atlanta.

2

The informant met with co-defendants Vasquez and Aguilar the following day, October 11. Mr. Whiters was present. He didn't go to the meeting. He stayed in his car. The meeting occurred at a Waffle House off of I-75. And the story that the informant was given was that Mr. Whiters would take the cocaine, cook it into crack, and resale it in Chicago.

At a later day the informant traveled to Atlanta again to meet Mr. Whiters and co-defendant[s] Vasquez and Aguilar. At that point they showed the informant a paper bag that they claimed was full of cash and . . . co-defendant Fredrico Jones was actually in the area and he was there in case the informant had actually showed up with the drugs and willing to make the drug transaction. At that point then Mr. Jones would have taken the opportunity to rob the informant.

The negotiations continued on for a few more weeks and eventually Mr. Whiters, Aguilar, and Vasquez came up with an agreement where the informant would supply 5 kilograms of cocaine for $30,000 a kilo, and 150 pounds of marijuana for $450 per pound. So the total amount of $67,500 for the marijuana. The total amount of the drug deal was in excess of . . . $200,000, less than a quarter million.

All of the final arrangements were made regarding the drug deal were going to take place on November 2nd, 2011. They agreed it would occur at around 11 a.m. at the Cracker Barrel Restaurant which is off exit 290, right off I-75 in Cartersville.

So, on the November 2nd, law enforcement set up surveillance around the Cracker Barrel and part of the area where they set up was in the BP station across the street. It's on higher grounds so it gives a look over that. And the -- next to the Cracker Barrel there was a Shell gas station as well as a Waffle House. When law enforcement set up the surveillance, they realized there were other cars gathered nearby them. These were the other defendants who were engaged in doing counter surveillance.

There was Maurice Beavers who showed up in a Bonneville. Corwin Finsley showed up in a blue Acura. Those two got out of their cars and spoke to each other. Then Willie Townsend later showed up in a Cadillac, and he also got out of his car and engaged Mr. Beavers and Finsley in conversation.

Finally, Mr. Whiters and co-defendant Aguilar showed up. They could be seen on the BP surveillance camera, arriving in a Ford Fusion, but they were parked elsewhere at the BP station.

The informant was waiting at the Cracker Barrel and he received a phone call from Vasquez who said he was nearby. He said he wanted to do the deal at the Waffle House. The inference being Vasquez was already in the area and knew where the Waffle House was. Eventually, some of the persons went to the Cracker Barrel and others drove around. Finally, the Cadillac showed up. Mr. Townsend was driving. Mr. Jones was in the front seat and Mr. Vasquez was in the back seat.

Mr. Jones got out of the car and told the informant he wanted to go to the Shell gas station right next door because there were no security cameras there. The informant asked to see the money. Mr. Jones said it was in the trunk. They moved next door to the Shell gas station.

The informant got out of his truck at that point and that's when Jones pulled a gun on the informant and pointed it at him and told him to get in the car. The informant started to struggle with Mr. Jones for the gun. The informant got the gun away and that's when he threw it on the ground and went in the Shell station, the convenience store there, and blocked the door.

And at this point law enforcement was closing in. They thought it was a buy/bust. It turned into a drug rip. Mr. Jones picked up the gun and jammed it into the grille of the confidential informant's truck. The Cadillac was stopped. Mr. Vasquez and Townsend were inside and Mr. Townsend was bending down and at that point he was supposed to raise

> his hand; they found a loaded 9 millimeter Kel-tec underneath his seat. Mr. Beavers was stopped. He was going to leave with Mr. Finsley and Mr. Finsley's car was later searched pursuant to an inventory search and in there the search involved one 9 millimeter semi-automatic pistol and Mr. Finsley's wallet was also in the car. He arrived by himself.
>
> Mr. Whiters and co-defendant Aguilar actually fled the area. Mr. Aguilar was arrested in a Sprint store in Atlanta later that evening as he was in the process of buying a new phone. The informant had his phone number, so Mr. Aguilar needed to get a new phone. Mr. Aguilar agreed to help the agents find Mr. Whiters and did cooperate which led to Mr. Whiters being arrested in his car at a Texaco station in Atlanta, the same Texaco station where he met the informant a week earlier when he had to come down to Atlanta.

(Plea. Tr. 19-23.) Mr. Whiters confirmed that was "pretty well what happened," but had one correction–he was arrested at a Chevron gas station, not a Texaco. (Id. at 23.) In accordance with the binding sentencing agreement, the Court imposed a total sentence of 204 months of imprisonment. (Am. J. [216].) Mr. Whiters did not file a direct appeal.

Mr. Whiters timely filed the instant Motion to Vacate, arguing that his counsel was ineffective for: (1) not investigating the drug deal set up by law enforcement; (2) failing to research and investigate the charged crimes, which would have affected the plea agreement; (3) failing to negotiate a more favorable plea agreement; and (4) not performing "the required determination of proper Guidelines assignment nor

5

the 18 U.S.C. § 3355 findings." (Mot. Vacate 4-5, 7-8.) The government responds that Mr. Whiters's grounds for relief lack merit. (Resp. 9-16.)

## II. DISCUSSION

### A. Legal Standards

A federal prisoner may file a motion to vacate his sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned **REPORTS** that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although a prisoner seeking collateral relief is entitled to an evidentiary hearing if relief is warranted by the facts he alleges, which the court must accept as true, a hearing is not required if the record conclusively demonstrates that no relief is warranted).

6

The standard for evaluating ineffective assistance of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one. <u>Id.</u> at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u> at 690. Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Id.</u> at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

### B.     Ground One: Counsel's Failure to Investigate the Drug Deal

In ground one, Mr. Whiters argues that his attorney was ineffective for not investigating the drug deal set up by law enforcement.  Mr. Whiters maintains that "[t]here was no evidence of actual drugs or drug amounts[, thus] the drug amounts recited in the [indictment] were contrived," and that the element of force to obtain the drugs was not part of the plan; rather, the conspirators only intended "at all times to 'trick' . . . [the confidential informant] drug dealer out of the drugs."  (Mot. Vacate 4.)

The Court construes this ground as an attack upon the validity of Mr. Whiters's guilty plea, and it fails because Mr. Whiters has not alleged prejudice, i.e., "that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted); see also Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000) (Movant has the burden of affirmatively proving prejudice.)  Moreover, Mr. Whiters's guilty plea "waived all challenges to the factual basis underlying" his convictions, United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted), and "serve[d] as an admission of all the elements of" the charged offenses, United States v. Saac, 632 F.3d 1203, 1209 (11th Cir. 2011) (citations omitted).  Thus, Mr. Whiters is not entitled to relief on ground one.

### C. Grounds Two and Three: Counsel's Failure to Research and Investigate the Charged Crimes and Failure to Negotiate a More Favorable Plea Agreement

Ground two reiterates the failure to investigate claim raised in ground one and adds that there was insufficient evidence for the conspiracy charge and no proof of any aggravating factors. (Mot. Vacate 5.) Mr. Whiters also alleges in ground two that counsel was ineffective for agreeing to the "boilerplate agreements demanded by the Government and their binding nature." (Id.) In ground three, Mr. Whiters faults counsel for not negotiating a more favorable plea agreement. (Id. at 7.)

These claims fail for the same reasons discussed above. Mr. Whiters does not allege that he would not have pleaded guilty had counsel conducted additional investigation, and his guilty plea admitted all of the elements of the conspiracy charge and waived any challenge to the factual basis. Even if trial counsel had attempted to negotiate a more favorable plea deal, and assuming that he did not do so, the government was under no obligation to engage in such negotiations or accept any counteroffer. See United States v. Palmer, 809 F.2d 1504, 1508 (11th Cir. 1987) ("A myriad of factors enter into plea bargaining decisions, and the decision to reject a proposed deal is entirely within the prosecutor's discretion."). Thus, Mr. Whiters cannot show prejudice because he can only speculate that the government would have

9

been willing to engage in further negotiations, and speculation is insufficient to entitle Mr. Whiters to habeas relief. Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001). In fact, the government believed that Mr. Whiters had a "leadership position" in the conspiracy, (Plea Tr. at 24), and insisted upon a binding sentence, (Guilty Plea and Plea Agreement at 5). It is therefore unlikely that the government would have been open to further negotiations.

### D. Ground Four: Counsel's Failure to Properly Calculate the Sentencing Guidelines

In his final ground for relief, Mr. Whiters contends that counsel was ineffective for not performing "the required determination of proper Guidelines assignment nor the 18 U.S.C. § 3355 findings." (Mot. Vacate 8.) Mr. Whiters, however, does not address any specific Sentencing Guidelines error or explain how they should have been calculated. Mr. Whiters entered into a binding plea agreement for seventeen years of imprisonment, which is within the middle of the Guidelines rage as calculated in the presentence investigation report ("PSR") (188 to 235 months). (PSR at 47-48.) Mr. Whiters faced a substantially higher sentence: up to twenty years on Count One, pursuant to § 1951(a); plus a seven-year mandatory minimum on Count Two, pursuant to § 924(c)(1)(A)(ii); a ten-year mandatory minimum on Count Three, pursuant to

10

§ 841(b)(1)(A)(ii)(II); and a twenty-five-year mandatory minimum on Count Four, pursuant to § 924(c)(1)(C)(i). Mr. Whiters simply cannot show deficient performance by counsel nor prejudice as to this ground.

### III. CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. § 2255, Rule 11(a). Section 2253(c)(2) of Title 28 states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Mr. Whiters's claims for relief, the resolution of the issues presented is not debatable by jurists of reason; thus, the Court should deny a certificate of appealability.

11

AO 72A
(Rev.8/82)

## IV. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Motion to Vacate [220] be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral of the Motion to Vacate to the undersigned.

**SO RECOMMENDED**, this 18th day of June, 2014.

_WALTER E. JOHNSON_ (signature)

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE